IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF OHIO
WESTERN DIVISION

| | |
|---|---|
| United States of America | : |
| | : Case No. CR-1-06-084 |
| | : |
| | : District Judge Susan J. Dlott |
| v. | : |
| | : ORDER GRANTING |
| Shawn McDaniel | : DEFENDANT'S MOTION TO |
| | : RECONSIDER; VACATING |
| Defendant | : THE COURT'S ORDER |
| | : DENYING DEFENDANT'S |
| | : MOTION TO SUPPRESS; AND |
| | : GRANTING DEFENDANT'S |
| | : MOTION TO SUPPRESS |

This matter comes before the Court on Defendant Shawn McDaniel's Motion to Reconsider (doc. 59) the Court's Order Denying Defendant's Motion to Suppress (doc. 44) in light of the recent decision of the Sixth Circuit in United States v. Blair, Nos. 06-6036, 06-6037, 2008 WL 1913167 (6th Cir. May 2, 2008).  The Government opposes Defendant's motion on the basis that Blair is factually distinguishable, but fails to address the manner in which it is distinguishable.  The Government also relies upon the law of the case doctrine, which "generally discourages courts from reconsidering determinations that the court made in an earlier stage of the proceedings."[1] United States v. Graham, 327 F3d. 460, 464 (6th Cir. 2003).  In other words,

---

[1] "'Law-of-the-case rules have developed to maintain consistency and avoid reconsideration of matters once decided during the course of a single continuing lawsuit.'" Rosales-Garcia v. Holland, 322 F.3d 386, 398 n. 11 (6th Cir. 2003) (en banc) (quoting 18B Charles Alan Wright, Arthur R. Miller & Edward H. Cooper, Federal Practice and Procedure § 4478 (2d ed. 2002)).

"[o]nce a court has decided an issue, its decision should generally be given effect throughout the litigation." Id. (citing United States v. Todd, 920 F.2d 399, 403 (6th Cir. 1990)).

The Court has reviewed Blair and finds it to be factually indistinguishable from the instant case. In Blair, a police officer, Officer Munday, was working in an undercover capacity and observed an individual later identified as the defendant, Marcus Blair, engage in a hand to hand transaction outside of a house and then drive away. Officer Munday believed the transaction to be drug related, but decided he lacked probable cause for an arrest because he could not determine what items had been exchanged. 2008 WL 1913167 at *2. Officer Munday radioed another officer, Officer Holmes, of the possible drug transaction but did not instruct Officer Holmes to pull Blair over. Id. Nonetheless, when Officer Holmes saw Blair's car approach from the direction of the suspect house, Officer Holmes pulled over Blair's vehicle upon suspicion that the "tag-light," or license plate light, was burned out. The officer noticed that Blair was "'a little fidgety' and was reaching underneath the seats of his vehicle." Id. The officer informed Blair that he had been pulled over for a tag-light violation, obtained Blair's license, and ran a check revealing that Blair's license was valid and that he had no outstanding warrants. Id. Officer Munday, having heard Blair's name over the radio, informed Officer Holmes that during a previous encounter Blair had been armed and had attempted to flea. Id. at *3.

Officer Holmes then asked Blair for permission to search his car. Id. Blair refused, and Officer Holmes continued to press, telling Blair that he was not under arrest, but that the area was known for drugs and he had reason to believe Blair possessed narcotics. Id. Upon Blair's continued refusal to consent to a search, Officer Holmes called in a canine unit. While waiting

for the unit, Officer Holmes observed for a second time Blair reach underneath the seats and toward his ankle area. Id. Officer Holmes told Blair to stop reaching and called for backup. After backup and the canine unit arrived, Officer Holmes ordered Blair out of the car, searched him, and found several bags of crack cocaine. Id.

After being indicted on drug charges, Blair filed a motion to suppress the evidence seized during the stop. The Sixth Circuit reversed the district court's denial of that motion, holding that Officer Holmes lacked reasonable suspicion to conduct a Terry stop[2] of Blair's car. The Sixth Circuit set the framework for its analysis as follows:

> An ordinary traffic stop by a police officer is a "seizure" within the meaning of the Fourth Amendment. Delaware v. Prouse, 440 U.S. 648, 653[] (1979). Accordingly, any evidence seized during an illegal traffic stop must be suppressed as "fruits of the poisonous tree." United States v. Hill, 195 F.3d 258, 264 (6th Cir. 1999) (quoting Wong Sun v. United States, 371 U.S. 471, 484[] (1963)). This circuit has developed two separate tests to determine the constitutional validity of vehicle stops: an officer must have probable cause to make a stop for a civil infraction, and reasonable suspicion of an ongoing crime to make a stop for a criminal violation. Gaddis v. Redford Twp., 364 F.3d 763, 771 n. 6 (6th Cir. 2004).

Blair, 2008 WL 1913167 at *5.

Applying this test to the initial stop, the Sixth Circuit assumed, without deciding, that Officer Holmes had probable cause to stop Blair's car for a tag-light violation. Id. at *6. However, looking at the information known to Officer Holmes at the time that he pulled over Blair's vehicle, the court held that Officer Holmes lacked reasonable suspicion of criminal activity as is necessary to justify a Terry stop. Id. at *7. Specifically, the court noted that Officer Holmes could not rely on his alleged knowledge that Blair's vehicle had just left a

---

[2] Terry v. Ohio, 392 U.S. 1 (1968).

known drug house because Officer Holmes could not see the house, did not see Blair's vehicle leaving the house, and could not be sure that Blair's vehicle was the vehicle that Officer Munday saw leaving the house. Id.

Having found that Holmes lacked reasonable suspicion to initiate a Terry stop upon first pulling Blair over and that the only arguably permissible basis for the initial stop was the traffic violation, the Sixth Circuit next determined that Officer Holmes exceeded the scope and duration of that stop by calling a canine unit to the scene after Blair refused to consent to a search of his car. The Sixth Circuit held in no uncertain terms that Officer Holmes had not developed reasonable, articulable suspicion of criminal activity by that time. In doing so, the court specifically found that Holmes' observations of Blair reaching under his seat and moving his hands around even when combined with the fact that Blair appeared nervous did not give rise to reasonable suspicion:

> We are left with Officer Holmes's testimony that Blair was unusually nervous and was reaching under the seats. As we previously have noted, nervousness is "an unreliable indicator, especially in the context of a traffic stop. Many citizens become nervous during a traffic stop, even when they have nothing to hide or fear." United States v. Richardson, 385 F.3d 625, 630-31 (6th Cir. 2004) (citing United States v. Saperstein, 723 F.2d 1221, 1228 (6th Cir. 1983)). And while evasive behavior is a pertinent factor in determining reasonable suspicion, [Illinois v. Wardlow, 528 U.S. 119, 124 (2000)], Blair's act of reaching under the seats, without more, does not justify a Terry stop.

Blair, 2008 WL 1913167 at 10.

Comparing Blair side by side to the instant case, the two cases appear indistinguishable. In the instant case, Officers Grisby and Putnick had no justification to conduct a Terry stop upon pulling up to the vehicle in which McDaniel was a passenger. At most the officers had probable cause to believe that the driver of the vehicle had committed a traffic violation by parking more

4

than twelve inches from the curb.[3] The officers exceeded the scope of that stop by ordering McDaniel to step out of the vehicle, handcuffing him, and patting him down. The Government may argue that the officers had not exceeded the scope of the traffic stop because they had not yet completed the purpose of the traffic stop. In other words, the officers had not yet issued a citation for the alleged traffic violation. However, the officers had ample opportunity to issue a citation or request that the driver pull over closer to the curb. Upon pulling up to the vehicle, the officers neither informed the driver that she had parked too far from the curb or in any other manner address the basis for the stop. Instead, they escalated the stop almost immediately from a traffic stop to a full Terry stop.

In its response to Defendant's motion to suppress, the Government claimed that under the totality of the circumstances, reasonable suspicion to justify a Terry stop arose during the initial traffic stop based upon the following factors: (1) McDaniel was sitting in a car that was impeding traffic on a narrow street in a notoriously high crime area; (2) he appeared startled and quickly turned away upon seeing the officers; and (3) he made furtive body movements near his waistband, suggesting he was attempting to hide a gun or other contraband in his pants. (Doc. 44 at 7.) The Court denied Defendant's motion to suppress on that basis; however, in finding that those factors, considered together, justified both the stop and the pat down of McDaniel, the Court noted that "this case presents a close question." (Id. at 14.) Having found no case in which Sixth Circuit held that officers lack reasonable suspicion to conduct a Terry stop under the precise circumstances present in this case, the Court was "reluctant to hold that an officer cannot

---

[3] Defendant does not dispute this matter.

conduct a limited pat-down of an individual during a traffic stop, where that individual made certain movements indicative of an attempt to conceal a weapon on his person." Id.

The Sixth Circuit's decision in Blair – that even when pulled over in a high crime area, the fact that a suspect appears nervous and makes evasive hand gestures such as reaching under the seat does not amount to reasonable suspicion of criminal activity – forces this Court to reconsider its prior decision. The only difference between the relevant circumstances in Blair and those in the instant case is that in Blair, the suspect reached under his seat while in this case, the suspect reached toward his waistband. There is no meaningful distinction between these movements, both of which could be indicative of attempts to conceal a weapon or contraband. If anything, Blair's repeated attempts to reach under his seat were more suspect than McDaniel's single act of moving his hands toward his waistband. Accordingly, the Court now holds that based on the totality of the circumstances, Officers Grisby and Putnick lacked the reasonable, articulable suspicion of criminal activity necessary to extend the scope and duration of the initial traffic stop. Therefore, the Court **VACATES** its Order Denying Defendant's Motion to Suppress (doc. 44), **GRANTS** Defendant's Motion to Reconsider (doc. 59), and **GRANTS** Defendant's Motion to Suppress (docs. 18, 42). All evidence seized as a result of the stop is hereby suppressed as fruits of the poisonous tree. See Blair, 2008 WL 1913167 at *10.

IT IS SO ORDERED.

                                                                                             s/Susan J. Dlott
                                                                                             Susan J. Dlott
                                                                                             United States District Judge